**STATE OF WISCONSIN,**
**Plaintiff-Appellee,**

v.

**Andrew F. GLICK, Joseph Birkenstock, Donald Leist, Michael Dewane, and Samuel S. Misenko, Defendants-Appellants.**

No. 85–2035, 85–2036, 85–2043,
85–2044 and 85–2258.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 8, 1986.
Decided Jan. 24, 1986.
Rehearing Denied March 21, 1986.

Charles D. Hoornstra, Asst. Atty. Gen., Madison, Wis., for plaintiff-appellee.

Andrew F. Glick, Whitelaw, Wis., Joseph Birkenstock, Michael Dewane, Manitowoc, Wis., Samuel S. Miseko, Newton, Wis., for defendants-appellants.

Before POSNER, COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

People saddled with mortgages may treasure the idea of having clean title to their homes. The usual way to obtain clean title is to pay one's debts. Some have decided that it is cheaper to write a "land patent" purporting to convey unassailable title, and to file that "patent" in the recording system. For example, Samuel Misenko, one of the appellants, drafted a "declaration of land patent" purporting to clear the title to an acre of land of all encumbrances. He recorded that "patent" with the appropriate officials of Manitowoc, Wisconsin. He attached to his "patent" a genuine patent, to a quarter section of land, signed by President Fillmore in 1851.

The theory of Misenko's new "patent" is that because the original patent from the United States conveyed a clear title, no state may allow subsequent encumbrances on that title. The patent of 1851 grants title to "Christian Bond and to his heirs and assigns forever." Misenko apparently thinks that this standard conveyancers' language for creating a fee simple "forever" bars all other interests in the land. We have held to the contrary that federal patents do not prevent the creation of later interests and have nothing to do with claims subsequently arising under state law. See *Hilgeford v. Peoples Bank*, 776 F.2d 176 (7th Cir.1985).

We have consolidated five pro se cases arising from home-drawn "patents." All five began as criminal complaints charging the appellants with criminal slander of title, in violation of Wisc.Stat. § 943.60(1). The state's theory is that the "patents" are frivolous documents that confuse the system of recording interests in real property. Each appellant removed the criminal proceeding to federal court, invoking 28 U.S.C. § 1443. The district court remanded the cases to state court, and the appellants promptly sought review.*

■ If self-drafted "land patents" are frivolous gestures, as we held in *Hilgeford*, then the removal of the state's prosecutions is frivolity on stilts. (Apologies to Jeremy Bentham.) Section 1443(1), which the appellants invoke, permits the removal of an action against a person "who is denied or cannot enforce in the courts of [the] State a right under any law providing for the equal rights of citizens of the United States...." A "law providing for the equal rights" means, in § 1443(1), a law guaranteeing racial equality. *Georgia v. Rachel*, 384 U.S. 780, 786–94, 86 S.Ct. 1783, 1786–91, 16 L.Ed.2d 925 (1966). "Denied or

cannot enforce" means that the frustration of the right to racial equality is "manifest in a formal expression of state law" (*id.* at 803, 86 S.Ct. at 1796)—that a statute or authoritative decision announces that claims of the sort asserted are untenable within the state's judicial system. See also *Johnson v. Mississippi*, 421 U.S. 213, 219–22, 95 S.Ct. 1591, 1595–96, 44 L.Ed.2d 121 (1975); *City of Greenwood v. Peacock*, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

■ Of the five appellants, only Glick asserts that he is the victim of racial discrimination. Glick, who is white, does not explain the nature of this discrimination. None of the appellants explains how the prosecutions for criminal slander of title offend any specific federal law securing racial equality. None explains how any state law frustrates all hope of implementing the federal right. The appellants say that the state courts are biased against them and that they are being prosecuted on account of the exercise of federal rights, but it has been established since *City of Greenwood v. Peacock, supra*, 384 U.S. at 827, 86 S.Ct. at 1812, that a person may not obtain removal just by alleging that "federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court." Unless a federal statute provides "that no State should even attempt to prosecute [appellants] for their conduct" (*id.* at 826, 86 S.Ct. at 1811–12), they may not remove. No federal statute authorizes the filing of bogus "land patents" that confound recording systems. There is no colorable argument for removal. The district court properly remanded these cases.

* Although orders remanding cases are ordinarily not reviewable by appellate courts, see 28 U.S.C. § 1447(d) and *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977), that statute permits appellate review when the removal was based on § 1443. Our jurisdiction is not defeated by the fact that Glick has been tried and convicted in the state court while the cases were pending here; a decision that the remand was improper would require Glick's conviction to be set aside. Cf. *Mancusi v. Stubbs*, 408 U.S. 204, 205–07, 92 S.Ct. 2308, 2309–10, 33 L.Ed.2d 293 (1972); *Fosdick v. Dunwoody*, 420 F.2d 1140, 1141 n. 1 (1st Cir. 1970).

*Hilgeford* held that the effort to use federal land patents to override subsequent interests in property was sufficiently frivolous to support an award of damages under Fed.R.App.P. 38. See 776 F.2d at 179. The combination of the claim found frivolous in *Hilgeford* with a frivolous effort to remove also supports a penalty. The difference is that these are criminal prosecutions.

We have been unable to find an award of attorneys' fees, or damages in lieu of attorneys' fees, against the defendant in any criminal case. Several considerations support a general reluctance to award attorneys' fees in criminal cases. First, most rules and statutes authorizing awards of fees—e.g., 42 U.S.C. § 1988 and Fed.R. Civ.P. 11—apply only to civil litigation. Second, courts have tolerated arguments on behalf of criminal defendants that would be inappropriate on behalf of civil litigants. Many rules, starting with the special burden to show guilt "beyond a reasonable doubt," recognize the social interest in having a bias against conviction. Novel arguments that may keep people out of jail ought not to be discouraged by the threat of attorneys' fees. Third, the statute authorizing the imposition of costs against criminal defendants, 28 U.S.C. § 1918(b), implies that the costs are to be part of the sentence (if the defendant is convicted), and an appellate court therefore cannot use this grant of power. Section 1918(b) also uses "costs" in the usual sense, which excludes attorneys' fees. Compare *United States v. Vaughn*, 636 F.2d 921 (4th Cir.1980), with *United States v. Glover*, 588 F.2d 876 (2d Cir.1978). Fourth, when a defendant seriously misbehaves in the trial court, the judge may take the misconduct into account in imposing sentence. *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). This reduces the need for a separate penalty in the form of attorneys' fees. Finally, there are practical and constitutional limits on the monetary sanctions that may be employed against indigent criminal defendants. See *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

Although it is therefore no surprise that courts do not award attorneys' fees against criminal defendants who assert frivolous positions, we have not found any case suggesting that an award of fees, or of damages under Rule 38 in lieu of fees, is prohibited. Criminal defendants and their lawyers must abide by the rules that apply to other litigants, see *Maness v. Meyers*, 419 U.S. 449, 458–60, 95 S.Ct. 584, 590–92, 42 L.Ed.2d 574 (1975), including the principle that litigating positions must have some foundation in existing law or be supported by reasoned, colorable arguments for change in the law. See Rule 11 and, e.g., *In re TCI, Ltd.*, 769 F.2d 441 (7th Cir.1985); *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177 (7th Cir.1985); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985). Cf. *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967); *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). An argument in the teeth of the law is vexatious, and a criminal defendant who chooses to harass his prosecutor may not do so with impunity. The time of prosecutors is valuable. If a defendant multiplies the proceedings, this takes time that could more usefully be devoted to other prosecutions. When a defendant makes an argument so empty that no responsible lawyer could think the argument supportable by any plausible plea for a change in the law the court may reply with a penalty.

We need not consider whether and when a court should impose sanctions on a criminal defendant who simply makes unsupportable arguments during the regular course of trial and appeal. (Perhaps sanctions imposed on counsel under 28 U.S.C. § 1927 would be more appropriate than sanctions on defendants.) These appellants have wrenched their cases from the regular course. Wisconsin filed simple criminal complaints. Instead of arguing their positions in the courts of Wisconsin, these appellants removed the cases, imposing costs on a new set of courts. These removals have distracted judges from serious cases and delayed the consideration of more substantial claims. The prosecutors must deal

not only with three levels of review in state court but also with two (so far, and potentially three) tiers of federal courts.

These removals vexatiously multiplied the proceedings in the original sense of that phrase. And federal courts lack the principal weapons available to the state courts to prevent harassing litigation. Because the appellants will not be sentenced in federal court, the court cannot impose the costs of prosecution as part of the sentence or augment any sentence of incarceration under the principle of *Grayson.* It is attorneys' fees and damages under Rule 38 or nothing.

An award of damages under Rule 38 in these cases will not stifle the vigorous defense of criminal charges. It will, however, ensure that the appellants and others like them think twice before removing to federal court criminal prosecutions that belong in state court. These petitions for removal had no conceivable foundation. Each defendant therefore is assessed $500 in damages under Fed.R.App.P. 38, in addition to double costs.

AFFIRMED.